IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUN BROWN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-4259 |
| | : | |
| MONTGOMERY COUNTY, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**　　　　　　　　　　　　　　　　　　　　　　　　　**February 24, 2010**

Shaun Brown asserts his employment was terminated in violation of the United States Constitution and Pennsylvania law, and he brings claims against his former employer, Montgomery County; his former supervisor, Sean Petty (Petty); and James R. Matthews, Joseph M. Hoeffel, and Bruce Castor, Jr., in their official capacities as Commissioners of Montgomery County (collectively, the Commissioners). For the reasons explained below, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

**FACTS**[1]

Brown worked for Montgomery County as an Emergency Dispatch Center supervisor. In this capacity, Brown supervised the daily operations of the County's 911 response center and ensured dispatchers appropriately responded to 911 calls. His job duties "provided him intimate access to the operations and performance" of the County's Computer Aided Dispatch (CAD) system. Amd. Compl. ¶ 15. A properly functioning CAD system is essential to the County's ability to respond efficiently to requests for emergency assistance. In 2005, Brown began reporting defects in the CAD

---

[1] In review of Defendants' Motion, the Court accepts all allegations in, and reasonable inferences drawn from, the Complaint as true and views them in the light most favorable to Brown. *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, 543 F.3d 150, 160 (3d Cir. 2008).

system to his supervisor, Petty, and Director Thomas Sullivan. During Brown's ten-year tenure as an Emergency Dispatch Center supervisor, the County used two different CAD systems. The first CAD system was a manual telephone-operated dispatch system, which was antiquated by industry standards. This system was replaced by a new CAD system, which sometimes delayed dispatching tasks to a greater degree than the old system. Brown told his superiors he believed deficiencies in the new CAD system posed a risk to the safety and health of Montgomery County residents, in contravention of federal and state emergency management regulations. Brown also voiced these concerns to Integraph, an independent contractor hired by the County to bring the new CAD system online. No Defendant took any action to improve the system or remedy the deficiencies Brown identified.

On February 21, 2008, after a quarterly training meeting in which Brown complained about the CAD system, Petty verbally abused and physically restrained Brown. Brown promptly reported this incident to Sullivan. On March 4, 2008, Brown requested a meeting with his supervisors to discuss his fear of retaliation for raising concerns about the CAD system. On March 7, 2008, Brown was fired, and Defendants disseminated information regarding his termination to the media.[2]

Brown asserts his termination was unlawful retaliation in violation of his First Amendment rights, and brings a 42 U.S.C. § 1983 claim against all Defendants – Montgomery County, Petty, and three Montgomery County Commissioners in their official capacities. Brown brings a second § 1983

---

[2] Defendants assert Brown was terminated as a result of County employees' discovery of certain photographs posted on Brown's personal web site. The photographs were taken at a holiday gift exchange, on County premises and during work hours, and depicted Brown in an explicit pose with a sex toy. Brown has not challenged Defendants' account of the existence of the photographs, their placement on the Internet, or their contents, but rather asserts discovery of the photographs was not the real reason for his termination.

claim against the Commissioners only, alleging denial of procedural due process and deprivation of a liberty interest in his professional reputation. Brown also brings a claim against the County and Petty, asserting his termination was unlawful retaliation, under the Pennsylvania Whistleblower Act, 43 Pa. C.S. §1421 *et seq.*, in response to his investigation and reporting of waste, fraud, and abuse at the Emergency Dispatch Center.

**DISCUSSION**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

As an initial matter, Brown's claims against the Commissioners in their official capacities

will be dismissed as duplicative. Such claims effectively merge with claims against, the real party in interest, Montgomery County, another Defendant in this case. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity he represents."). Dismissal of Brown's claims against the Commissioners in their official capacities is therefore appropriate. *See Irene B. v. Phila. Academy Charter Sch.*, No. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent, it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.") (citation and internal quotation marks omitted).

Brown asserts Defendants violated his First Amendment rights by terminating his employment after he expressed concerns about the CAD system. To state a First Amendment retaliation claim against his employer, Brown must allege two things: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Id.* A public employee's speech is protected "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Brown alleges he repeatedly reported deficiencies in the CAD system to his supervisors, an independent contractor, the news media, regulatory authorities, and government officials. The Court

4

must first determine whether these statements were protected by the First Amendment.[3] A public employee's statements made "pursuant to [his] official duties" do not qualify as speech made in his capacity as a citizen, and thus are not protected speech. *Garcetti*, 547 U.S. at 421. The inquiry into whether speech was uttered pursuant to a plaintiff's official duties is a practical one, and it is not limited by the plaintiff's formal job description.[4] *Id.* at 424-25.

In *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007), two former Delaware State Troopers and State Police Firearms Training Unit Instructors asserted their free speech rights were violated when they were disciplined after reporting health and safety concerns related to a firing range to their superiors and to the State Auditor. *Id.* at 233-34. The plaintiffs argued these statements were protected speech because they "exposed serious health and safety concerns and exposed government incompetence and wrongdoing," and such reports were not made pursuant to their official duties because "speaking out about health and safety problems at the firing range was not part of their job function." *Id.* at 238. The court held, however, that the plaintiffs' statements were made pursuant to their official duties because an adequately equipped firing range was needed to do their jobs and their "daily interaction with the equipment" created the responsibility to inform supervisors of any problems. *Id.* at 240 & n.6. The court also noted, even if the plaintiff's reports of safety concerns "exceeded the expectations of his formal job description," such reports were still within the scope of his duties because his duties encompassed regular use of the allegedly faulty equipment. *Id.* at

---

[3] Whether a public employee's speech is protected under the First Amendment is a question of law. *Azzaro v. County of Allegheny*, 110 F.3d 968, 975 (3d Cir. 1997).

[4] "[W]hether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008) (citation and internal quotation marks omitted).

5

242.

Similarly, in this case, Brown's job as an Emergency Dispatch Center supervisor was to ensure appropriate response to 911 calls, and the CAD system's proper functioning was integral to that role. Whether or not Brown's job description explicitly included making reports regarding CAD system functionality, Brown's familiarity with and regular use of the CAD system created a duty to report problems to his supervisor and to the independent contractor hired to implement the new CAD system. Brown's statements to his supervisors and the independent contractor regarding problems with the CAD system are thus not protected speech because his job duties necessarily encompassed taking steps to address and correct any perceived deficiencies of a system central to his job function.

Brown also alleges he complained about CAD system deficiencies to individuals and entities unaffiliated with his employer, including regulatory authorities, other government officials, and the news media. The Court must determine whether these statements were also made pursuant to Brown's job duties. "[A] claimant's speech might be considered part of his official duties if it relates to 'special knowledge' or 'experience' acquired through his job." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009). In this regard, *Kougher v. Burd*, 274 Fed. Appx. 197 (3d Cir. 2008), is instructive. In *Kougher*, a state dog warden brought a First Amendment retaliation claim after he was disciplined for speaking to a newspaper about an ongoing investigation of a certain dog kennel. *Id.* at 199. The district court granted the supervising employees' motion for summary judgment, holding the plaintiff's reports to media were unprotected speech because "his expressions fall clearly within the scope of his professional duties as state dog warden." *Id.* at 200 (internal quotation marks omitted). The Third Circuit affirmed, focusing on the content of the plaintiff's speech and noting

6

the plaintiff's speech was "entirely job-related." *Id.*; *cf. DeLuzio v. Monroe County*, 271 Fed. Appx. 193, 196-97 (3d Cir. 2008) (concluding the plaintiff's memoranda constituted protected speech where the plaintiff "did not have professional responsibility, or 'official duties,' over any of the topics covered in his memos"). In this case, Brown's statements to individuals and entities unaffiliated with the County arose from "experience acquired at his job" as an Emergency Dispatch Center supervisor, *Gorum*, 561 F.3d at 185, and the content of such statements was "entirely job-related." *Kougher*, 274 Fed. Appx. at 200. Such statements were thus made pursuant to his official duties and are not protected by the First Amendment. The Court will therefore grant Defendants' Motion to Dismiss Brown's First Amendment § 1983 claim.[5]

Brown also asserts the Commissioners violated his right to procedural due process by depriving him of the right to a pre-termination hearing. "[W]hen a substantive due process claim is premised upon a non-legislative state action, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Skrutski v. Marut*, 288 Fed.Appx. 803, 808 (3d Cir. 2008) (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to

---

[5] Brown argues his letters to various government officials were protected speech under *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008). In *Reilly*, the court held a police officer's trial testimony was protected speech because "[w]hen a government employee testifies truthfully, s/he is not simply performing his or her job duties, rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence." *Id.* at 231 (citation and internal quotation marks omitted). The *Reilly* Court specifically limited its holding to the question of whether trial testimony was protected speech. *See id.* (identifying the "speech at issue on this appeal" as the plaintiff's trial testimony). Thus, *Reilly* is inapposite here, where Brown's statements consisted of letters written to the offices of various government officials, not trial testimony.

7

those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Brown argues the County's personnel manual, and accompanying grievance procedures, created a contract between himself and the County, and he therefore acquired a property interest in continued employment unless and until he was afforded procedural due process before termination of such employment.

Under Pennsylvania law, "as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason." *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). The at-will employment presumption applies to public employees. *Knox v. Bd. of Sch. Directors of Susquenita Sch. Dist.*, 888 A.2d 640, 648 (Pa. 2005). Personnel manuals generally do not create binding employment contracts. *Lynady v. Cmty. Med. Ctr.*, 49 Pa. D. & C. 4th 391, 397-98 (Pa. Comm. Pl. Ct. 2000). "A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook." *Small v. Juniata College*, 682 A.2d 350, 353 (Pa. Super. Ct. 1996). Brown does not allege the personnel manual at issue evidenced such an intent by the County. Rather, Brown alleges its existence, and the existence of grievance procedures, established an other than at-will relationship. These allegations cannot survive the Commissioners' Motion to Dismiss.

> It is not sufficient to show [the employer] had a policy. It must be shown [the employer] offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

*Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 152-53 (Pa. 1989) (citation omitted); *see also Rutherfoord v. Presbyterian-University Hosp.*, 612 A.2d 500, 503 (Pa. Super. Ct.1992) (affirming the dismissal of an employee's wrongful discharge claim and rejecting the

8

plaintiff's argument his employer's manual and the employer's custom and practice of using the grievance procedures provided therein created an implied employment contract); *Lord v. Erie County*, No. 08-213, 2010 WL 56095, at *6-7 (W.D. Pa. Jan. 5, 2010) (rejecting the plaintiff's argument the defendant county's disciplinary procedures and employee handbook created a property interest in continuing employment); *Hillegass v. Borough of Emmaus*, No. 01-5853, 2003 WL 21464578, at *6-7 (E.D. Pa. June 23, 2003) (rejecting the plaintiff's argument the defendant borough's personnel policy, which set forth pre-termination procedures to which the borough failed to adhere in plaintiff's case, created a property interest in continued employment). Therefore, the Court will grant Defendants' Motion to Dismiss Brown's § 1983 claim premised upon deprivation of a property interest in continued employment.[6]

Finally, Brown brings claims under the Pennsylvania Whistleblower Law, 43 Pa. C.S. §1421 *et seq.*, against Montgomery County and Sean Petty, his former supervisor. This law prohibits employers from taking retaliatory actions against employees who report wrongdoing or waste. § 1423. A person who alleges a Whistleblower Law violation must bring his complaint "within 180 days after the occurrence of the alleged violation."[7] § 1424. The 180-day limitations period is "mandatory and must be strictly applied." *Jackson v. Lehigh Valley Physicians Group*, No. 08-3043, 2009 WL 229756, at *5 (E.D. Pa. Jan. 30, 2009); *see also O'Rourke v. Pa. Dep't of Corrections*, 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999) ("[T]his 180-day time limit is mandatory, and courts have

---

[6] The Court concludes Brown has stated a § 1983 claim premised upon an alleged procedural due process violation in deprivation of a liberty interest in his reputation. The Court will therefore deny Defendants' motion to dismiss as to that claim only.

[7] Brown argues his Whistleblower Law claim is timely based upon his incorrect assertion that the statute of limitations established by § 1424 is six months.

9

no discretion to extend it."). "Courts have no discretion to extend this time period, and will dismiss claims brought after the period expires." *Id.* (citations omitted).

Brown alleges the County and Petty retaliated against him for reporting CAD system deficiencies by terminating his employment on March 7, 2008. Brown brought the instant action on September 4, 2008, 181 days "after the occurrence of the alleged violation." 43 Pa. C.S. § 1424. Thus, Brown's Whistleblower Law claims are untimely and must be dismissed. *See Street v. Steel Valley Opportunities Industrialized Ctr.*, No. 06-421, 2006 WL 2172550, at *5 (W.D. Pa. July 31, 2006) (granting summary judgment in favor of defendants on statute of limitations grounds where the plaintiff filed his Whistleblower Law claim one day after the 180-day limitations period had expired).

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, J.
United States District Judge