IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAUN BROWN : CIVIL ACTION
:
v. : No. 08-4259
:
MONTGOMERY COUNTY, et al. :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                          **March 31, 2011**

Plaintiff Shaun Brown brings a 42 U.S.C. § 1983 claim against his former employer, Defendant Montgomery County, for violation of his Fourteenth Amendment right to procedural due process.[1] Brown alleges the County deprived him of his liberty interest in his reputation by making false and defamatory public statements about him in connection with his termination without providing a name-clearing hearing. Both parties have filed motions for summary judgment. For the reasons set forth below, the County's motion is granted and Brown's motion is denied.

**FACTS**[2]

From 2003 until his termination in 2008, Brown worked for the Montgomery County Emergency Operations Center (the 911 Center) as a platoon supervisor, supervising the Center and

---

[1] Brown's Amended Complaint included additional claims pursuant to § 1983 and Pennsylvania law against the County and four other Defendants: Deputy Director of Public Safety Sean Petty and County Commissioners James Matthews, Joseph Hoeffel, and Bruce Castor, Jr. By Order of February 24, 2010, this Court dismissed with prejudice all of Brown's claims except his § 1983 procedural due process claim premised on a deprivation of liberty interest in reputation. Because Brown sued the County Commissioners only in their official capacities, this Court also dismissed the claims against the Commissioners as duplicative of Brown's claims against the County. Therefore, the County is the only remaining Defendant, as Petty was not a Defendant in Brown's § 1983 procedural due process claim.

[2] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

ensuring dispatchers appropriately responded to 911 calls. On December 22, 2007, Brown and the dispatchers working the 7:00 p.m. to 7:00 a.m. shift participated in a gift exchange/holiday party at the 911 Center. Brown was the only supervisor on duty at the time. One of the dispatchers took photographs of the gift exchange, and on December 25, 2007, Brown posted four of those photographs on his MySpace page.[3] The posted photographs depict (1) a dispatcher with a Michelob Ultra box on her lap, (2) two dispatchers at a work station, with one holding a bottle of Captain Morgan rum, (3) two dispatchers at another work station, with one holding a bottle of alcohol, and (4) Brown and another dispatcher, with Brown wearing a ball gag in his mouth and holding an anal plug.[4] Brown incorporated some of the photographs from the gift exchange into a PowerPoint presentation he prepared for a Christmas party his platoon held at a local restaurant on December 28, 2007, including the photograph of a dispatcher with a Michelob Ultra box and possibly others.

On December 31, 2007, two 911 Center supervisors called Brown at home and told him Deputy Director of Public Safety Sean Petty had seen the photographs on Brown's MySpace page and was extremely angry about them. The supervisors told Brown he had two hours to take the photographs off-line and directed him to call any other dispatchers who had photographs online and tell them to remove them. Brown immediately deleted the photographs from his MySpace account and never re-posted them after December 31, 2007.

In March 2008, Montgomery County Director of Public Safety Thomas Sullivan learned of

---

[3] "MySpace.com is a 'social networking web site' that allows its members to create online 'profiles,' which are individual web pages on which members post photographs, videos, and information about their lives and interests." *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 845 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

[4] Although Brown testified the Michelob Ultra box did not actually contain beer, he admitted the bottles depicted in the other photographs contained alcohol.

the existence of the photographs from Petty in the course of investigating a grievance Brown had filed against Petty. The photographs were thereafter brought to the attention of County Commissioner James Matthews, who ordered an investigation. On March 5, 2008, the County's Chief Operating Officer/Chief Clerk, Robert Graf, instructed Sullivan to "investigate the situation with the pictures and the holiday party," directing him to interview the participants that same evening. Defs.' Mot. Ex. H, Sullivan Dep. 36.

As part of the investigation, John DiNolfi, the 911 Center's Assistant Director of Operations, told Brown to report to work on March 5 at 5:00 p.m., rather than 7:00 p.m., for a platoon meeting. When Brown arrived at work, Sullivan took him into a conference room where several other higher-level employees were assembled. Members of the group attempted to question Brown, but he declined to cooperate without his attorney present. Sullivan then directed Brown to relinquish his ID card and work pager and told him he was being suspended with possible intent to dismiss.

On March 6, 2008, a public Board of Commissioners Meeting was held, at which the investigation into the gift exchange was discussed and the Salary Board of the Board of Commissioners voted to terminate Brown. Following the meeting, articles appeared in various newspapers regarding the investigation and Brown's firing, several of which included quotes from County Commissioners about the matter. Specifically, articles published in *The Mercury*, *The Times Herald*, and *The Philadelphia Inquirer* on March 7, 2008, quoted the Commissioners as referring to the behavior of those involved in the gift exchange as "unbelievably stupid" and "moronic," and characterizing the photographs as damaging to the "public confidence." Pl.'s Ex. 1a. The *Philadelphia Inquirer* article also reported the photographs had come to light "weeks after a disabled woman burned to death after her Jan. 29 Bucks County 911 call was bungled." *Id.* After noting the

3

capacity of the photographs "to damage public confidence in Montgomery County's emergency-response system was not lost on Matthews," the article quoted Commissioner Matthews as stating, "[t]hat in itself is a malfeasance." *Id.*

Although none of the March 7 articles mentioned Brown by name, a March 21, 2008, article in *The Morning Call* identified Brown as the platoon supervisor who had been fired. The March 21 article reported on a Board of Commissioners meeting on March 20, 2008, and stated Assistant County Solicitor Maureen Coggins's probe of the gift exchange and photographs "revealed that no one consumed alcohol that evening but that employees violated county code by having alcohol on county property. They also violated the county's code of ethics by engaging in inappropriate behavior." *Id.*

Although Brown requested a name-clearing hearing, he has never been provided one.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The same rules apply when there are cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

When a public employer "'creates and disseminates a false and defamatory impression about

4

[an] employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). A § 1983 due process claim alleging a deprivation of a liberty interest in reputation is known as a "stigma-plus" claim, in which "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Id.*

To satisfy the "stigma" prong of the test, there must be (1) publication of (2) a substantially and materially false statement that (3) infringes upon the "reputation, honor, or integrity" of the employee. *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996). Because the principal remedy for a stigma-plus claim is a name-clearing hearing, "there must be some *factual* dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Codd*, 429 U.S. at 627 (emphasis added).

Brown's claim for deprivation of his liberty interest in his reputation is based solely on statements which appeared in the March 7 *Philadelphia Inquirer* article and the March 21 article in *The Daily Call*. Specifically, Brown contends he was stigmatized by (1) a quote from Commissioner Matthews in the March 21 *Daily Call* article, in which Matthews referred to the capacity of the gift exchange photographs to damage public confidence in the County's emergency response system as "a malfeasance," and (2) statements in the March 7 *Philadelphia Inquirer* article that a probe by Assistant County Solicitor Maureen Coggins revealed "that employees violated county code by having alcohol on county property [and] . . . also violated the county's code of ethics by engaging in inappropriate behavior."[5]

---

[5] In his motion for partial summary judgment, Brown also appeared to base his stigma-plus claim on statements by the County Commissioners characterizing the behavior of the participants in the gift exchange as "unbelievably stupid," "moronic," and damaging to the "public confidence." At

5

As to the former statement, Commissioner Matthews's actual comments at the March 6 Board of Commissioners meeting—the source of the quote attributed to him—reveal the reference to "malfeasance" was not directed at Brown.[6] Rather, in response to questions from an audience member as to whether disciplinary action would be taken against any employees who participated in the gift exchange *other* than the one supervisor who was terminated (*i.e.*, Brown), Commissioner Matthews stated:

> To give you a straight answer, I do . . . not anticipate any further terminations beyond the terminations (inaudible). . . . We do not at this time anticipate. Further investigation might reveal a need in such a compromise of public competence, which in itself constitutes a malfeasance, that we might indeed drop somebody else, but right now as it is we've only had one termination and others will probably suffer some degree by a wage withholding or something of that nature.

Defs.' Resp. Ex. A, Partial Tr. of Mar. 6, 2008, Montgomery Cnty. Comm'rs' Meeting 24.

Even if Commissioner Matthews's comment could be construed as having characterized Brown's behavior as "malfeasance," as Brown suggests, the comment is not sufficiently stigmatizing to support a stigma-plus claim. Brown admits he participated in a gift exchange at the 911 Center during work hours at which employees were photographed posing at their work stations with bottles

---

oral argument, however, Brown's counsel stated he was not relying on these comments, which were made by the Commissioners at the March 6, 2007, Board meeting, but was relying only on the statements described above.

[6] In analyzing a statement attributed to a public official by the news media, a court should "focus primarily on the evidence concerning what the . . . official[] actually told [the reporter], not on what [the reporter] wrote." *Shands v. City of Kennett*, 993 F.2d 1337, 1348 (8th Cir. 1993). When asked at his deposition whether he recalled being interviewed by the writer of the *Philadelphia Inquirer* article, Commissioner Matthews responded, "[n]o, there's not an interview," and explained the statements attributed to him in the article were based on his statements at the March 6 Board meeting. Defs.' Mot. Ex. L, Matthews Dep. 93-94. Although Commissioner Matthews could not recall where the reporter got the "malfeasance" quote, *id.* at 94-95, the transcript of the March 6 meeting includes a comment by Matthews which is nearly identical to the published quotation.

of alcohol and sex toys. Brown also admits he was the only supervisor on duty during the gift exchange and that he posted photographs from the gift exchange on his MySpace page. Because Brown does not deny these facts, he cannot recover for any reputational injury caused by the County's disclosure of his underlying conduct. Describing this conduct as malfeasance due to its capacity to damage public confidence in the County's emergency response system adds little to the reputational injury Brown suffered as a result of the disclosure of the conduct itself. *See Ersek*, 102 F.3d at 84-85 (holding a Township employee failed to show his employer's actions infringed a protected liberty interest where his future employment prospects were harmed by the disclosure he was being investigated, not by the Township's false statement regarding the Board of Commissioners' level of involvement in the investigation). Moreover, although Brown argues use of the term "malfeasance" is per se defamatory, the law is otherwise. *See Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir. 2002) ("[N]o liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." (citation and internal quotation marks omitted)).

Finally, the County cannot be liable for Commissioner Matthews's statements because "only a majority of the three-member Board is authorized to establish policy on behalf of the County." *LaVerdure v. County of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003) (holding Montgomery County could not be liable under § 1983 for allegedly stigmatizing statements by one Commissioner who, by himself, lacked final policymaking authority, where the plaintiff had not shown the Board had "delegated him the authority to speak for the Board or acquiesced in his statements"); 16 Pa. Cons. Stat. Ann. § 504(a) (providing two commissioners shall constitute a quorum for the transaction

7

of county business).[7]

The County likewise cannot be liable for the statements attributed to Coggins in the March 7 *Philadelphia Inquirer* article because Brown has produced no evidence that Coggins, an Assistant County Solicitor, possessed final policymaking authority. *LaVerdure*, 324 F.3d at 125-26 ("Proving that a municipal official is a final policymaking authority is a fundamental element of a § 1983 cause of action against a municipality."). Moreover, Brown's claim as to these statements—that Coggins's investigation revealed that "employees violated county code by having alcohol on county property" and "violated the county's code of ethics by engaging in inappropriate behavior"—also fails because he does not suggest the statements, which were not even mentioned in his motion, are substantially and materially false. *See Fraternal Order of Police, Lodge No. 5 v. Tucker*, 868 F.2d 74, 82-83 (3d Cir. 1989) (holding police officers failed to prove a deprivation of a liberty interest in reputation based on a report they had been discharged for refusing to submit to urinalysis for suspected drug use where the officers claimed the allegations of drug use were "unconfirmed and unsubstantiated," not false). Indeed, when presented with the Montgomery County Handbook provision regarding substance abuse and alcohol at his deposition, Brown agreed County policy forbid giving alcohol as a gift on County property. Defs.' Mot. Ex. D, Brown Dep. 45-46. Brown also testified he believed the statement that employees violated the ethics code was false and defamatory because "[t]his was standard behavior that had happened for years prior . . . to this incident." *Id.* at 92-93. The fact the gift exchange had been held in the past, however, has no bearing on whether the 2007 gift exchange violated the ethics code.

---

[7] Although Brown argues Commissioner Matthews was the County's chief decisionmaker for terminations, it is undisputed the decision to fire Brown was confirmed by vote of the Salary Board.

Because Brown has failed to show a reasonable jury could find a County official with policymaking authority made materially false and defamatory statements about him in connection with his termination, the County's motion is granted and Brown's motion is denied. An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.